STATE of Iowa, Appellee,

v.

Terrance Eugene OLIVER, Appellant.

No. 68708.

Supreme Court of Iowa.

Dec. 21, 1983.

John P. Roehrick of Roehrick, Lavorato, Schuster & Hassell, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann Ryan, Asst. Atty. Gen., Ted Prine and T. Dominic Corsello, Asst. County Attys., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

McCORMICK, Justice.

Defendant Terrance Eugene Oliver appeals from his conviction by jury and sentence for first-degree murder in violation of Iowa Code section 707.2(2) (1979). He urges six grounds for reversal. Because we find no merit in any of them, we affirm the trial court.

The charge arose from the stabbing death of Charles Leon Kimsey, Jr. on April 1, 1981. Kimsey was found dead in his Des Moines apartment on April 2, 1981, the apparent victim of robbery and murder. Following an investigation which included a search of defendant's residence, defendant and his sister Debra were arrested for the offense. Debra's conviction was recently affirmed by this court. *See State v. Oliver,* 341 N.W.2d 25 (Iowa 1983).

Defendant alleges the court erred in overruling his motion to suppress evidence obtained in the search, in overruling an objection to footwear impression testimony, in instructing the jury on the elements of felony murder, in overruling defendant's due process attack on the felony murder statute, and in denying a new trial because of juror misconduct. Defendant also alleges he was denied a fair trial because of ineffective assistance of counsel.

I. *The search.* Defendant lived in his mother's home. During the course of their investigation, the Des Moines police obtained a warrant to search the residence. Defendant had been implicated in the offense by his sister Debra. She told the officers that various articles taken at the time of the killing were in defendant's residence. She also described the clothing defendant wore at the time he allegedly stabbed the victim.

The officers knew certain "bachelor magazines" were missing from the victim's apartment, but they were not listed in the information for the warrant or the warrant itself. In executing the search warrant, the officers looked in defendant's bedroom for the clothing described in the warrant. They had not found a red T-shirt listed on the warrant at the time one officer lifted the edge of a rug on the bedroom floor. He found three magazines there of the kind taken from the victim's apartment. The officers seized the magazines and held them as evidence.

Before trial, defendant moved to suppress the magazines. The State asserted they were admissible under the "plain view" doctrine. The trial court initially sustained the motion but, when the State sought reconsideration of the ruling during trial, the court reversed itself and admitted the evidence.

■ The plain view doctrine provides a basis for upholding a seizure of evidence without a search warrant. The doctrine was delineated as an exception to the fourth amendment warrant requirement by a plurality of the United States Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The burden is on the State to prove its applicability. *Id.* at 454–55, 91 S.Ct. at 2032, 29 L.Ed.2d at 576. Cases in which

this court has discussed and applied the doctrine include *State v. Dickerson,* 313 N.W.2d 526, 530–32 (Iowa 1981), *State v. Holtz,* 300 N.W.2d 888, 892 (Iowa 1981), *State v. Kelly,* 284 N.W.2d 236, 238–39 (Iowa 1979), and *State v. Davis,* 228 N.W.2d 67, 69–73 (Iowa 1975).

■ Three prerequisites must be satisfied for a plain view seizure. The intrusion into the otherwise protected area must be justified, the discovery of the object must be inadvertent, and its incriminating nature must be immediately apparent. *Coolidge,* 403 U.S. at 468–71, 91 S.Ct. at 2039–41, 29 L.Ed.2d at 584–86. Defendant contends none of the prerequisites were established in this case.

The first prerequisite is the lawfulness of the intrusion. Although defendant acknowledges the lawfulness of the officers' intrusion into his bedroom, he argues the warrant did not authorize a search under the rug. The officer testified he was looking for the T-shirt when he lifted up the rug. In arguing the intrusion was unjustified, defendant relies on cases holding that a search warrant does not authorize intrusions into areas where the objects of the search are unlikely to be. *See, e.g., United States v. Chadwell,* 427 F.Supp. 692 (D.Del. 1977) (searching for mag wheels and tires on the small top shelf of a closet held not to be within the scope of a warrant). In the present case, however, the T-shirt for which the officer was looking might reasonably have been hidden under the bedroom rug.

■ Defendant questions the motive of the officer in lifting the rug. The issue, however, is not controlled by the officer's subjective state of mind. Instead it is determined by an objective assessment of the officer's actions in light of the facts and circumstances known to him. That "the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v.*

*United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978).

Applying the objective standard here, we find it was not unreasonable for the officer to look for the T-shirt under the bedroom rug. The first requisite of the plain view doctrine was satisfied.

■ For the State to establish the second requisite, it had to show the discovery of the magazines was inadvertent. An officer may not know in advance the location of certain evidence and intend to seize it, relying on the plain view doctrine only as a pretext. *Texas v. Brown,* —— U.S. ——, ——, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510 (1983) (plurality opinion). In the present case no basis exists for finding that the magazines were intentionally omitted from the search warrant and the plain view doctrine merely used as a pretext for seizing them. The record establishes that the magazines were omitted from the warrant application by oversight rather than intention, and the officers were not looking for them. We conclude that the magazines were discovered through inadvertence within the meaning of the doctrine.

The third and final requisite, that the incriminating nature of the magazines be immediately apparent, was also shown. The Supreme Court has said that a practical, nontechnical probability is all that is required. *Id.* at ——, 103 S.Ct. at 1543, 75 L.Ed.2d at 514. The necessary probability exists when there is probable cause to associate the property with criminal activity. *Id.* at ——, 103 S.Ct. at 1542, 75 L.Ed.2d at 513.

Here the officer had seen a National Lampoon magazine in the victim's mailbox with a mailing label addressed to the victim. The National Lampoon magazine found in defendant's bedroom had a portion of the front cover torn off where a mailing label might have been. The other two magazines that were found under the rug, Penthouse and Hustler, were of the kind reported missing from the victim's apartment, and they also had part of their covers torn off. This information was suffi-

cient for a person of reasonable caution to believe that the magazines might have been stolen from the victim.

■ We conclude that all elements of the plain view doctrine were established. Therefore the trial court did not err in overruling defendant's motion to suppress the magazines.

■ II. *The footwear impression.* A criminalist compared a bloody shoe print found on a piece of paper in the victim's apartment with the sole of the defendant's tennis shoe. The witness was permitted to testify over defendant's foundation objection that defendant's shoe could have made the impression on the paper. Applicable principles are discussed in *State v. Campbell*, 326 N.W.2d 350, 354 (Iowa 1982), and *State v. Mark*, 286 N.W.2d 396, 409 (Iowa 1979). In this case the expert found a similar tread pattern, similar shoe size, and twelve similar individual or manufacturing defects. No dissimilarities were found. We find no abuse of trial court discretion in admitting the expert opinion.

■ III. *The instruction.* Defendant complains that the trial court's marshalling instruction on felony murder was unclear concerning whether the element of malice aforethought had to accompany the acts constituting the homicide or the acts constituting the felony. We assume without deciding that his objection at trial was sufficient to preserve error on this ground. We find that the instruction was not ambiguous in the respect claimed. The only specific "acts" identified in the instruction were the stabbing and choking of the victim which caused his death, and the jury was instructed of the State's duty to prove that "defendant's acts were done with malice aforethought." Defendant's assertion of ambiguity is hypertechnical and speculative. Moreover, the jury was separately given an accurate definition of second-degree murder as the killing of another "with either express or implied malice aforethought." The jury was also told that an offense which otherwise would be second-degree murder is first-degree murder if, in addition, the accused kills the other person while participating in a forcible felony. *See* § 707.2(2) When read as a whole, the instructions remove any possible basis for confusion in the marshalling instruction.

We find no merit in defendant's attack on the felony murder instruction.

■ IV. *The constitutional issue.* Defendant's due process attack on the felony murder statute goes one step beyond the attack which this court rejected in *State v. Nowlin*, 244 N.W.2d 596 (Iowa 1976). In *Nowlin* this court held that the due process clause of the fourteenth amendment of the United States Constitution was not violated by Iowa Code section 690.2 (1975) which, like present section 707.2(2), enhanced murder committed in the perpetration of certain felonies to first-degree murder. *See* 244 N.W.2d at 604–05. Defendant contends due process is violated because the element of malice aforethought necessary for second-degree murder may be supplied by inference from the acts constituting the felony. Malice may be inferred, for example, from the commission of a felony that results in death. *State v. Taylor*, 287 N.W.2d 576, 578 (Iowa 1980).

We do not believe this, however, is a constitutional problem. The jury in this case was instructed separately on the elements of murder and the elements of robbery. The murder and felony, if they occurred, occurred in one transaction. Obviously the jury would examine the same evidence to determine whether the State proved the elements of each offense, and the acts of the accused in carrying out the alleged robbery may well also have shown the resulting murder was committed with malice aforethought. Nevertheless the jury was required to find that the felony and murder had each been committed before the felony could be added to the murder to enhance the crime to first-degree murder. Defendant could not be convicted of murder under the court's instructions without a finding of malice aforethought. This is consistent with this court's holding in *State v. Galloway*, 275 N.W.2d 736, 738 (Iowa 1979).

The Iowa statute is not vulnerable to the criticism directed at the common law felony murder rule in *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980). Common law felony murder was established by proving a killing in the perpetration of a felony. Under section 707.2(2) felony murder is established by proving a murder while participating in a forcible felony. The State is thus not relieved of its burden to prove malice aforethought. *See State v. Conner*, 241 N.W.2d 447, 463 (Iowa 1976). We do not intimate that we would otherwise find merit in defendant's constitutional attack. We merely hold that the application of the felony murder statute in this case did not deny defendant due process.

■ V. *Juror misconduct.* Defendant contends the trial court erred in overruling his motion for new trial based on alleged juror misconduct. In his motion, he asserted that on two occasions jurors talked to members of the victim's family. All jurors testified no such contact occurred, as did four members of the victim's family and a friend of the victim. The trial court found the alleged contacts did not occur. We are bound by this finding because it is supported by substantial evidence. *See Harris v. Deere & Co.*, 263 N.W.2d 727, 729 (Iowa 1978). The trial court did not err in overruling the motion for new trial on the ground of juror misconduct.

VI. *Ineffective assistance of counsel.* As part of his motion for new trial, after a change of counsel, defendant alleged his trial counsel had been ineffective in numerous respects. The trial court rejected these claims. They are not specifically repeated in this appeal, although they are incorporated by reference and argued generally. We do not approve this method of arguing the claims, but, without deciding whether they should be deemed waived, we reject them on the merits, adopting in each instance the reasoning of the trial court.

■ Defendant does assert a new claim in alleging trial counsel did not notify the trial judge soon enough of the possible juror misconduct so an investigation could be made while memories were fresh. No factual basis for this claim exists.

The trial court did not err in any of the respects asserted.

AFFIRMED.